## McGIRR v. HUMPHREYS GROCERY CO.

(District Court, N. D. Ohio. August, 1911.)

1. EVIDENCE (§ 21*)—JUDICIAL NOTICE—CUSTOMS OF BUSINESS.
    In determining whether the facts were such as to put a creditor on inquiry as to the solvency of a bankrupt, when payments were made, the court may take judicial notice of business customs and methods.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 25; Dec. Dig. § 21.*]

2. BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCES—NOTICE TO CREDITOR.
    Where the facts are such as to make it the duty of a creditor to make inquiry as to the solvency of a debtor on receiving payments, such duty is not discharged by inquiring of the debtor alone.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.*]

In Equity. Suit by one McGirr, trustee in bankruptcy of Z. E. Rollins, against the Humphreys Grocery Company. On exception to findings and conclusions of trustee. Affirmed, and decree for complainant.

J. W. Schaufelberger, for plaintiff.
C. S. Mauk, for defendant.

KILLITS, District Judge. The exceptions in this case deal very largely with the special master's conclusions of fact subsidiary to the ultimate fact upon which only can his conclusion of law be founded, wherefore the court need not follow the laborious and detailed argu-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment of counsel for defendant in which error in the master's con-
clusion as to matters purely evidential or subordinate to the final
analysis of the case is attempted to be shown. The master may have
erred in his detailed statement of the effect of the testimony many
times, and yet have reached a right conclusion as to the ultimate fact.

[1] Before the relief demanded by the trustee may be had, these
three questions must be answered in the affirmative: Was Z. E. Rol-
lins insolvent at the time of the payment to defendant? Did the pay-
ment operate as a preference to defendant? Did the defendant at
the time know, or have reason to know, of the insolvency?

The first two need no discussion. That each should receive an af-
firmative answer is not open to dispute. The whole case hinges on
the application of the testimony to the third.

Two propositions are in force to work an answer to this question
from the facts before us: First, that the doctrine of responsibility
for inquiry is of full force in such a case as this; and, second, that
we may concede and use judicial notice of business customs and meth-
ods as criteria for valuing facts as imposing the duty of inquiry. Ap-
plying these propositions, we very readily see from the testimony that
the special master was right in finding an answer to this third ques-
tion.

Considering the history of Rollins' account with the Humphreys
Grocery Company, how it increased steadily on the debit side, it is in-
conceivable that the defendant should not have reached an appre-
hension that its customer was failing. This was apparently defend-
ant's state of mind when it demanded that Rollins should deal with
it exclusively. That arrangement, it seems to us, peculiarly and es-
pecially thereafter, put the company on inquiry, a relation it occupied
with increasing emphasis, as still the unfavorable balance grew.

[2] When once the duty to inquire occurred, it was not met, under
the circumstances of this case, by inquiry alone of Rollins. It is not
readily credible that a man with capacity sufficient to appoint him
to the work of salesmanship for a wholesale house may be held to
accept Rollins' word and inquire no farther, in the face of things
which he might see every day, had be been but reasonably curious.
Modern business is more alert than this. One charged with the duty
of inquiry is not excused by the acceptance of an answer which could
so readily have been tested for untruth as could that of Rollins, which
McConahy says he blindly acted upon. But the most ordinary activity
on the latter's part, involving little more than mere inspection of the
stock and the most casual inquiry, would have shown the falsity of
Rollins' statement. We think that the situation required this addi-
tional caution on McConahy's part, and that failure to observe it prej-
udices the claim of defense that it had no reason to suspect the un-
questioned insolvency of its customer.

However this may be, there can be no question but that the de-
fendant had almost actual notice, through McConahy, of the insol-
vency at the time the money was paid on Rollins' account by Com-
rie. Then McConahy learned two things: First, that the stock would
not invoice half of Humphreys' account; and, second, that the bank

was also a large creditor. These circumstances were enough to put the most obtuse business man upon active inquiry, if they do not amount to actual notice. The most superficial review of Rollins' circumstances then would have shown that the little shoe stock, and the book accounts, being all the rest of her visible assets, would not have anywhere near approximated in salable value the $1,400 additional necessary to pay defendant and the bank, and the discovery of the latter claim was a loud call upon defendant to investigate for other debts.

Our conclusion is that the special master was right, and his report and recommendation will be made the order of the court; the exceptions thereto being disallowed.