## McGEE v. BRANAN & CARSON CO.

(District Court, N. D. Georgia, W. D. December 17, 1924.)

No. 118

**1. Bankruptcy ⟂166(4)—Creditor's actual belief in solvency of debtor is not conclusive on question whether payment constituted unlawful preference.**

Under Bankruptcy Act, §§ 60a, 60b (Comp. St. § 9644), whether payment to creditor was made when he had reasonable cause to believe debtor insolvent, and the payment an unlawful preference, is determinable, not by creditor's actual belief, but by the belief which he ought to have entertained as to debtor's solvency, in view of facts known to him.

**2. Bankruptcy ⟂166(4)—Creditor's belief in debtor's solvency held unreasonable, and payment an unlawful preference.**

Creditor's good-faith belief in debtor's solvency at time of receiving payment in full of its claim *held* unreasonable, in view of circumstances, such that payment constituted unlawful preference, under Bankruptcy Act, §§ 60a, 60b (Comp. St. § 9644).

At Law. Action by Thomas J. McGee, trustee in bankruptcy of one Bray, against the Branan & Carson Company. Judgment for plaintiff.

Paul Blanchard and Hatcher & Hatcher, of Columbus, Ga., for plaintiff.

A. W. Cozart and J. E. Chapman, both of Columbus, Ga., for defendant.

SIBLEY, District Judge. The suit is to recover as a preference money paid to Branan & Carson Company, and was submitted to the court without a jury. I find the facts to be these:

The bankrupt, Bray, lost his stock of drugs and fixtures by fire in November, 1923, having insurance thereon of $3,000. This insurance, together with accounts of a face value of $500 or $600, but of nominal actual value, together with a secondhand automobile, in which he had an equity of about $400, constituted his assets. He owed $700 on a mortgage of his stock of merchandise, and to Branan & Carson Company he owed $530.89, and to McKee Drug Company, another local firm of wholesale druggists, he owed $435, beside many other smaller debts, the invoices for which had not been destroyed in the fire. Bray's landlord, Mr. Martin, proceeded to collect his rents and garnished the insurance company. This garnishment was paid off, and Bray, disputing any liability for further rent and intending to work in another city, executed an assignment of the insurance claim to Branan & Carson Company, with intent that they should adjust the insurance for him, pay themselves thereout, and pay the balance to other creditors. Bray, however, did not go away. The assignment was never brought to the notice of the insurance company, nor otherwise acted on, was not produced at the trial, and is not the basis of any present claim. Bray adjusted and collected the insurance himself, being met with the contention that his policy was voided by the undisclosed mortgage on his stock, so that $1,785 only was paid over on February 11, 1924.

On January 17th preceding, McKee Drug Co. sued him and garnisheed the insurance money. When the insurance check was collected at the bank, Bray had present his attorney. Branan & Carson Company was represented by an attorney, and the insurance company was represented by its local agent. The propriety of paying Branan & Carson Company in full was discussed, and the insurance agent offered to take the money and prorate it among all creditors. Bray refused to do this, insisting on his right to conduct his own affairs. He stated his indebtedness was about $2,200, not producing his invoices or undertaking to be exact, and that he had, beside the $1,785 insurance money, $100 obtained by the surrender of a life insurance policy, some little fire salvage, the accounts, and the automobile, the total assets being there figured at $2,485. Branan & Carson Company was advised by its counsel that it might properly accept payment in full, and did so, believing that Bray was barely solvent and would pay all his debts. A sum sufficient to pay the garnishment was left with the insurance agent, and Bray took the remainder of the money and did pay it to creditors, paying in full such as he paid at all. The McKee garnishment was dissolved by giving a bond on February 13th. The cash set aside for it was taken by Bray and partly used to pay attorneys to put him into bankruptcy; his voluntary petition being filed February 16, 1924. It showed creditors unpaid of $1,638.70, beside the $1,800 or more paid off just before. His only assets disclosed are the accounts and automobile, all claimed as a homestead.

There is no contention that the transfer of the money to Branan & Carson Company was with intent on Bray's part to hinder and defraud other creditors, the intent being known to or suspected by the transferee. The sole contention is that Bray was in fact insolvent, and that the transfer did in fact give Branan & Carson Company a larger precentage of its debt than could be

paid to other creditors, making a preference under Bankruptcy Act, § 60a (Comp. St. § 9644), and that the transferee had reasonable cause to believe that such preference would result, making it voidable under section 60b.

Of the first part of this contention there can be no doubt. Bray was insolvent after his fire. Branan & Carson Company have got 100 per cent. of their debt, and many creditors have got nothing. Had there been an equal division after Branan & Carson Company were paid, they would all have got less than 50 per cent. The payment to Branan & Carson Company was not one made in the ordinary course of business. The circumstances were quite extraordinary, did indicate a failure in business, and did produce a belief in the probability of insolvency and an employment of legal counsel. The transfer would clearly be voidable, except for the further fact that investigation was actually undertaken and an actual belief in the bankrupt's solvency and intention to pay his debts was substituted. This belief was induced solely by the unverified statement of the bankrupt that his debts were about $2,200, instead of $3,600, as ascertained a few days later. In terms of the statute, under all the circumstances, was Branan & Carson Company's belief in solvency *reasonable*, or did all the circumstances more reasonably require a belief in insolvency involving a preference?

[1, 2] Their actual belief is not conclusive. The test is the belief that ought reasonably have been entertained under the facts known to them. The uncertainty of the value of the secondhand automobile and of the past-due accounts of a defunct retail business is notorious. The unreliability of a mere estimate of debts made by the debtor, without any reference to records, is quite well known. It seems to me unreasonable to rely on these as a sufficient and proper showing of solvency, when solvency has been seriously questioned. The taking of this payment was without any moral obliquity, or intention to defraud creditors, or circumvent the law; but it seems to me to have been necessarily and consciously subject to the chance that insolvency might, on better investigation, be disclosed, and the payment defeated. This conclusion is in line with the decisions under the act prior to the amendment of 1910 (McGirr v. Humphrey's Grocery Co. [D. C.] 192 F. 55, and In re The Leader [D. C.] 190 F. 624), and not opposed by In re Klein, 197 F. 241, 116 C. C. A. 603. In re Gaylord

(D. C.) 225 F. 234, is to be distinguished on its facts.

Judgment will be rendered for the plaintiff.