### YARM v. WHITCUP.

### No. E-5013.

District Court, E. D. New York.

Jan. 5, 1931.

Herman G. Robbins, of Brooklyn, N. Y., for plaintiff.

Karelsen & Karelsen, of New York City, for defendant.

BYERS, District Judge.

This is an action brought by a trustee in bankruptcy in which a decree is sought declaring a transfer of property made by the bankrupts to the defendant on January 9, 1930, to be preferential and void, and directing that judgment be entered against the defendant for the sum of $1,100 and interest from that date.

The transfer sought to be avoided consisted of five suits of clothes and seventeen overcoats which the defendant had previously sold to the bankrupts, and which the defendant removed from their place of business in a taxicab, under circumstances about to be related.

The dealings between the defendant and the bankrupts began on October 11, 1929, between which date and December 31, 1929, merchandise was sold by the defendant to the bankrupts consisting of men's clothing of a total agreed value of $1,655.56; of this sum, $559.50 had been repaid by December 16, 1929, leaving a balance of $1,096.

The goods were sold on thirty days' credit, so that, as to all items which had been delivered by the defendant to the bankrupts prior to December 9, 1929, the account was overdue.

What happened, in brief, was this:

On the evening of January 8, 1930, one of the bankrupts telephoned to the defendant and asked the latter to call at the former's place of business on that evening to discuss and, if possible, help to adjust a dispute which had arisen between the partners; this the defendant was unable to do, but made an appointment for 8 o'clock the following morning, at his own store, and there one of the bankrupts joined him, and they, with two other creditors, proceeded to the place of business of the bankrupts. They found the store locked, and it seems that each partner had a key and a separate lock, and the store could not, therefore, be opened unless both partners were present.

The second partner finally arrived, and all hands entered the store, where a condition of confusion at once arose as the result of recriminations, charges, and counter-charges, and the defendant is not clear as to exactly what took place. One of the partners who testified in this case stated that he believed that the inventory of the bankrupts at that time was sufficient to pay their debts, and probably he said this to the defendant, but neither partner was able to state how much cash there was in the bank, and the partner testifying said that at that time there was only $5 or $10 in the firm bank account.

Some of the garments which had been sold to the bankrupts by other creditors than the defendant were placed on a table, and, while this defendant, called as a witness for the plaintiff, said that he did not see such creditors remove any merchandise, it is difficult to understand how he could have been blind to what was going on. His testimony is:

"I saw some clothing put out on the table by Mr. Snyder for them (other creditors), but whether they removed it or not, I don't know."

The defendant says that he was in the store for about an hour, during which interval one of the partners went out in order to borrow $3,000 to buy out the partner who remained in the store. This statement is denied by that partner (Harris), who says that his purpose in withdrawing was to interview a salesman who had been employed in the enterprise, and Harris thought, as he testifies, that this salesman could help to straighten out the matter at that time "between the creditors."

During the absence of Harris, the defendant removed the merchandise above referred to, in a taxicab, and made no effort to ascertain the true facts as to the financial condition of the partnership.

On January 11, 1930, an involuntary petition in bankruptcy was filed, and the schedules show insolvency.

It seems quite clear that sufficient facts were brought to the attention of the defendant to place him upon inquiry, which would have revealed the insolvency of the bankrupts and the preferential nature of the transfer of the merchandise to him which he says he removed with the consent of one of the partners. The facts which put him upon this inquiry may be tabulated as follows: On January 9, 1930, the store was locked and business was not going on; on January 8, 1930, and prior thereto, he knew that the bankrupts asserted that they were overstocked with his merchandise; the indebtedness owing by the bankrupts to him was overdue as above stated; the presence of other creditors in the store engaged in the act of removing their merchandise; and the dispute between the partners as to the extent of their inventory, and the fact that neither was able to state the cash balance in bank, which no one attempted to verify.

The defendant asserts that he believed that a mere dissolution of the partnership was imminent; it is believed that this alone was sufficient to require that he should closely ascertain all facts concerning the solvency of the partnership, the number of creditors, the amount owing to them, the extent to which any merchandise in the store was claimed to be on consignment, and all other pertinent information touching the financial condition of the partnership. The testimony shows that the defendant did not ask for particulars as to the indebtedness of the firm or how the creditors were to be paid, and he did not even ask for a list of the creditors.

The fact that the defendant took his merchandise with him shows that this was an unusual transaction, and was consistent only with the desire on the part of the defendant to take care of his own interests without regard to the rights of other creditors or the true financial condition of the bankrupts. It is believed that he was not excused from making a diligent inquiry because of the somewhat vague and general statements made by the bankrupts to him concerning what they believed to be the amount of their inventory and the total of their debts. As was stated in McGirr v. Humphreys Grocery Co. (D. C.) 192 F. 55, 56:

"When once the duty to inquire occurred, it was not met, under the circumstances of this case, by inquiry alone of Rollins. It is not readily credible that a man with capacity sufficient to appoint him to the work of salesmanship for a wholesale house may be held to accept Rollins' word and inquire no farther, in the face of things which he might see every day, had he been but reasonably curious. Modern business is more alert than this. One charged with the duty of inquiry is not excused by the acceptance of an answer which could so readily have been tested for untruth as could that of Rollins, which McConahy says he blindly acted upon. But the most ordinary activity on the latter's part, involving little more than mere inspection of the stock and the most casual inquiry, would have shown the falsity of Rollins' statement. We think that the situation required this additional caution on McConahy's part, and that failure to observe it prejudices the claim of defense that it had no reason to suspect the unquestioned insolvency of its customer."

It is urged on the part of the defendant that there is no sufficient proof in the record of the value of the merchandise to sustain the decree which the trustee seeks. In answer to this, it may be stated that the defendant has proved no claim in bankruptcy which is consistent with a purpose on his part to consider that the balance owing to him, of $1,096, was offset by the merchandise which he recaptured. This is some evidence that the merchandise was agreed to be worth that sum, i. e., that it was worth that sum.

Judgment will be ordered for the plaintiff, declaring the transfer of this merchandise to the defendant on or about January 9, 1930, to have been preferential and void, and directing the defendant to repay to the plaintiff the sum of $1,096, with interest from January 9, 1930.